IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KONINKLIJKE AHOLD, N.V., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:10-cv-1060-MEF |
| | ) | [WO – Do Not Publish] |
| MILLBROOK COMMONS, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Non-party Bruno's Supermarkets, Inc. ("Bruno's") commenced a voluntary bankruptcy reorganization proceeding under Chapter 11 of the Bankruptcy Code in February of 2009. This case concerns a Guaranty executed in 2002 by Plaintiff/Counterclaim-Defendant Koninklijke Ahold, N.V. ("Koninklijke Ahold") in favor of Defendant/Counterclaim-Plaintiff Millbrook Commons, LLC ("Millbrook Commons") in which Koninklijke Ahold guaranteed the financial obligations of Bruno's under a 2001 lease Bruno's entered into with Millbrook Commons for a Bruno's supermarket in that location.[1] The case now comes before the Court on Koninklijke Ahold's Motion for Summary Judgment (Doc. # 31) and Millbrook Common's Motion for Partial Summary Judgment (Doc. # 34). Having considered the fully-briefed motions, the evidentiary attachments, and

---

[1]    Defendants/Counterclaim-Plaintiffs Milton G. Domit Limited Liability Company ("Domit") and Karen D. Stephens ("Stephens") (collectively "Successors") are successors to Millbrook Commons. (Compl. ¶¶ 6-7 (Doc. # 2); Answer ¶¶ 6-7 (Doc. # 11).) For simplicity's sake, the Court will refer to all of the Defendants as "Millbrook Commons," unless otherwise specified.

the relevant law, the Court concludes that Koninklijke Ahold's motion is due to be GRANTED in part and DENIED in part and that Millbrook Commons' motion is due to be DENIED, as set forth below.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1332 (diversity) and 2201-02 (declaratory judgments).  The parties do not contest personal jurisdiction or venue, and there are adequate allegations in support of both.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quotation omitted).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by

showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

If the movant satisfies its evidentiary burden, the non-moving party must then establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); Fed. R. Civ. P. 56(c).  What is material is determined by the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  Furthermore, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation and internal quotation marks omitted).

A genuine dispute as to a material fact can be found only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Greenberg*, 498 F.3d at 1263.  However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 242 (citations omitted).  Likewise, "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment[,]" *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir.

3

2004), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Furthermore, a nonmoving party's "conclusory allegations . . . in the absence of supporting evidence, are insufficient to withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); *see also Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact . . . .") (emphasis in original).

When a nonmovant fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex Corp.*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

## III.  BACKGROUND

Bruno's and Millbrook Commons entered into a lease in December of 2001, which provided for two ten-year terms, plus four optional terms of five years each.  For the first ten years, monthly rent was $29,798.77.  It was contemplated that rent would increase to $31,283.28 for the second ten-year period.  Importantly, Article XVI of the lease, titled "Default," included a "Tenant Default" provision, which reads, in its entirety:

> In the event Tenant should fail to pay any of the monthly installments of
> Rental reserved herein for a period of more than ten (10) days after the same

4

shall become due and payable or if Tenant shall fail to keep or shall violate any other condition, stipulation or agreement herein contained, on the part of Tenant to be kept and performed, and if either such failure or violation shall have continued for a period of thirty (30) days after Tenant shall have received written notice as herein stipulated from Landlord to pay such rent or to cure such violation or failure then, in any such event, Landlord at its option, may either (a) terminate this Lease or (b) reenter the Premises by summary proceedings or otherwise expel Tenant and remove all property therefrom and relet the Leased Premises making reasonable and good faith efforts to obtain the best possible rental terms therefor and receive the rent therefrom.  But Tenant shall remain liable for the deficiency, if any, between Tenant's rent under this Lease and the price obtained by Landlord on reletting.

(Lease Agreement § 16.01 (Doc. # 31-2).)

Koninklijke Ahold is an international grocery retailer based in Amsterdam, the Netherlands, and it acquired Bruno's in December of 2001.[2]  (Irving Rachstein Decl. ¶ 2 (Doc. # 31-27).)  Shortly thereafter, on March 29, 2002, Koninklijke Ahold executed the Guaranty at issue in favor of Millbrook Commons.  (Rachstein Decl. ¶ 4.)   Under the Guaranty, Koninklijke Ahold agreed to "irrevocably and unconditionally guarantee[ ] the due fulfillment by [Bruno's] of all of [Bruno's'] financial obligations under the Lease, which financial obligations shall include rent and additional rent due Landlord by reason of its performance of unperformed Tenant obligations under this Lease."  (Guaranty ¶ 1 (Doc. # 31-3).)  The Guaranty further provides that it "shall be construed and enforced in accordance with the laws of the State of Alabama."  (Guaranty ¶ 12.)

Issues regarding the lease and Guaranty did not arise until early 2009, when Millbrook Commons and its real estate broker heard "rumblings" that there might be an imminent

---

[2]  It later sold Bruno's in 2005.

Bruno's bankruptcy. (William B. Clements Dep. 28-29 (Doc. # 31-25).) The rumors proved well-founded, as Bruno's ultimately did file a Chapter 11 petition in the Northern District of Alabama, on February 5, 2009. (Bankruptcy Pet. (Doc. # 31-4).) On February 18, 2009, Bruno's filed a motion with the Bankruptcy Court seeking authority to close the store located at Millbrook Commons (among others), sell all the assets therein, and vacate the premises. (Docs. # 31-5, -6.) That motion was granted by the Bankruptcy Court on March 2, 2009. (Doc. # 31-7.) Pursuant to that order, Bruno's sold all of the fixtures in the premises to Millbrook Commons for $300,000.00. (Doc. # 31-8; Clements Dep. 29, 85-87.)

Three days later, Bruno's filed a rejection motion, pursuant to 11 U.S.C. § 365(a) (stating that "the trustee, subject to the court's approval, may assume or reject any . . . unexpired lease of the debtor"), to reject the Millbrook Commons lease. *See also Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1300 n.8 (11th Cir. 2007) (noting that a debtor-in-possession also has authority to reject under § 365(a) by operation of 11 U.S.C. § 1107(a), which generally authorizes debtors-in-possession to perform the same functions as a trustee). The rejection motion was granted by the Bankruptcy Court on April 10, 2009, which found that the rejection was effective April 8, 2009. (Doc. # 31-10.)

Faced with a rejected lease and a vacant grocery store, Millbrook Commons was eager to find a replacement tenant, as the health of the entire shopping center was at risk. According to Mr. Clements, Millbrook Commons' real estate agent, having an "operating anchor tenant is vital to the health of the shopping center. Not having an operating anchor

tenant hurts smaller tenants and makes it more difficult for a landlord to rent other space in the shopping center."  (Clements Aff. ¶ 6 (Doc. # 35-8).)  On the other hand, Stan Huner, who is a co-executor of the Estate of Milton J. Domit, testified that he simply wanted to "maximize the potential for the income of the property."  (Huner Dep. 30 (Doc. # 35-4).) When Mr. Huner said "property," it is unclear whether he referred only to the vacant grocery store or to the entire Millbrook Commons shopping center.

Either way, with these objectives in mind, Millbrook Commons had two offers that are relevant to this case.  The first was in the form of a replacement lease from Koninklijke Ahold; the second was an offer from Triple N Enterprises, Inc. ("Triple N").  Each offer came with advantages and disadvantages.  Koninklijke Ahold's was roughly double the amount of money offered by Triple N.  On the other hand, Triple N planned to occupy the space immediately, while Koninklijke Ahold had no definite replacement tenant lined up.[3] Millbrook Commons accepted Triple N's offer and entered into a lease on August 10, 2009. (Doc. # 35-9.)

The Successors to Millbrook Commons then sought to recover from Koninklijke Ahold on the Guaranty.  This battle was initiated in state court when Millbrook Commons or the Successors filed a series of complaints, each seeking unpaid rent for one discrete month during the 2009 year.  The first such case ("first state court action") was filed by Millbrook Commons itself in Elmore County Circuit Court on September 22, 2009, and

---

[3] There are other differences as well, but given the Court's resolution of these cross-motions for summary judgment, *infra*, it is unnecessary to spell out the details of each offer.

sought one month's rent from Koninklijke Ahold for **February 2009**.  *See* No. CV-2009-900292.  Prior to Koninklijke Ahold's filing of an answer or summary judgment motion, on January 27, 2010, Millbrook Commons filed a Notice of Dismissal voluntarily dismissing the complaint.

The next state court case ("second state court action") was filed on December 10, 2009, by Stephens and Domit (the "Successors"), and sought recovery of rent under the Guaranty for the month of **February 2009**.  No. CV-2009-900363 (Elmore Cnty. Cir. Ct.).  After some delay, Koninklijke Ahold filed an answer on April 26, 2010.  On November 1, 2010, the Successors filed a motion to dismiss without prejudice, which was granted on November 3, 2010.

The third state court case ("third state court action") was filed on August 16, 2010 by the Successors, and seeks recovery of rent under the Guaranty for the month of **June 2009**.  No. CV-2010-900246 (Elmore Cnty. Cir. Ct.).  On December 13, 2010, Koninklijke Ahold filed a document titled "Motion to Dismiss or, in the Alternative, to Stay Proceedings."  On May 19, 2012, the Circuit Court granted Koninklijke Ahold's motion to stay and placed the case on administrative docket pending the outcome of this case.  The third state court action is the only case that remains pending.

On November 1, 2010, the Successors filed three more complaints ("the fourth state court action," "the fifth state court action," and the "sixth state court action") in Elmore County Circuit Court.  Nos. CV-2010-900333 & CV-2010-900332 & CV-2010-900331.  The

fourth, fifth, and sixth state court actions sought recovery of rent under the Guaranty for **August 2009** (fourth), **July 2009** (fifth), and **May 2009** (sixth), respectively.  On December 13, 2010, Koninklijke Ahold filed, in all three actions, motions to dismiss or stay which are identical to the one filed in the third state court action.  On February 16, 2011, the Successors made "oral motions" to dismiss the fourth and sixth state court actions without prejudice, which were "granted" by the Circuit Court.  In the fifth state court action, the Successors filed a "Notice of Dismissal" on February 7, 2011, which stated that "Plaintiffs hereby give notice that the above-styled action may be dismissed without prejudice, pursuant to Rule 41(a)(1) of the Alabama Rules of Civil Procedure."  The notice was docketed as a motion, which was "granted" by the Circuit Court, dismissing the fifth state court action.

Koninklijke Ahold commenced this declaratory judgment action on December 13, 2010.  In its summary judgment motion, Koninklijke Ahold argues that Bruno's abandoned the lease, which was accepted by Millbrook Commons, thus terminating the lease and, by consequence, the Guaranty.  Alternatively, Koninklijke Ahold argues that if the lease was not abandoned or if the abandonment was not accepted by Millbrook Commons, then § 16.01 of the lease does not bind Koninklijke Ahold to the difference between the Bruno's and Triple N leases either because that lease provision: (1) is not applicable to abandonments; or (2) was itself breached by Millbrook Commons by failing to accept Koninklijke Ahold's replacement lease offer.  Furthermore, Koninklijke Ahold argues that the multiple voluntary dismissals of the various state court actions has *res judicata* effect under Alabama Rule of Civil

Procedure 41(a)(1).  Finally, Koninklijke Ahold advances an argument that *Ala. Code* § 6-5-280 operates to bar Millbrook Commons from recovering any rents owed up to November 1, 2010.

Millbrook Commons' summary judgment motion argues primarily that Bruno's' rejection of the lease in bankruptcy was not an abandonment of the lease, but a breach. Because the rejection was a breach, Millbrook Commons argues, § 16.01 of the lease arguably governs, and Millbrook Commons' acceptance of Triple N's offer did not breach Millbrook Commons's good faith duty found within § 16.01.  If this is the case, then Millbrook Commons is entitled to the excess rent under the Guaranty.

## IV.  DISCUSSION

A.  <u>**Bruno's Breached the Lease by Abandoning the Premises Through Its Bankruptcy Reorganization, but the Abandonment Potentially Was not Accepted Until August 10, 2009**</u>

The first question the Court is called upon to consider is whether Bruno's' rejection of the lease in bankruptcy constituted a breach by abandonment or some other kind of default on the lease.  Neither party appears to dispute that Bruno's, in fact, breached the lease.  (*See* Koninklijke Ahold's Resp. Br. 9 (Doc. # 38) (arguing that "a breach of the lease typically accompanies an abandonment"); Millbrook Commons's Resp. Br. 1 (Doc. # 37).)  Indeed, as a matter of substantive bankruptcy law, the rejection of the lease that occurred in Bruno's' bankruptcy proceeding is deemed to be a breach of the lease agreement as a matter of law. *See* 11 U.S.C. § 365(g)(1) (stating that "the rejection of an . . . unexpired lease of the debtor

constitutes a breach of such . . . lease . . . ."); *see also Thompkins*, 476 F.3d at 1307 (collecting cases).

Thus, the Court turns to the question of whether Bruno's abandoned the leased premises, which is a question of Alabama law.[4]  The Alabama Supreme Court has stated that, "[a]s a general rule, abandonment occurs when the lessee leaves the premises vacant with the avowed intention not to pay rent."  *N&L Enter., LLC v. Lioce Props., LLP*, 51 So. 3d 273, 278 (Ala. 2010).  Both of the two elements listed above (vacation and intention) are questions of fact.  *See Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc.*, 873 So. 2d 1091, 1100 (Ala. 2003) (Brown, J., plurality opinion) (citing *Ex parte Kaschak*, 681 So. 2d 197, 200 (Ala. 1996)).

Whether or not Bruno's' rejection of the lease in bankruptcy constituted an abandonment is important because Alabama courts have recognized a "distinction between default and abandonment . . . ."  *Bowdoin Square, L.L.C.*, 873 So. 2d at 1100 (citing *Int'l Tool & Eng'g Co. v. Sullivan*, 389 So. 2d 138, 140 (Ala. Civ. App. 1980) and *Locascio v. Barber*, 87 So. 703, 704 (1920)).  When a lessee abandons a leasehold, the landlord has two exclusive remedies at common law.  *Kaschak*, 681 So. 2d at 200.  First, the landlord may

---

[4]  Neither party argues that Alabama substantive law does not apply to interpretation of the lease.  For contract cases, Alabama follows the *lex loci contractus* test of the First Restatement of Conflict of Laws.  Under *lex loci contractus*, "a contrct is governed by the law of the jurisdiction within which the contract is made."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Eagle Aviation Academy, LLC*, No. 10cv108WKW, 2010 WL 4867644, at *4 (M.D. Ala. Nov. 23, 2010) (Watkins, J.) (citing *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009)).  Here, the lease was entered into in Alabama.  (Doc. # 31-2, at 57.)  Thus, Alabama's choice of law principles mandate that the lease be interpreted according to Alabama law.

allow the premises to stay vacant for the duration of the lease and recover rent from the lessee for the whole term. *Id.* (explaining that the landlord "is under no affirmative duty to mitigate"). The landlord's second option is to accept the abandoned property by re-entering the premises. *Id.* When the landlord pursues this second option, the re-entry extinguishes the abandoning lessee's obligations under the lease. *Id.* As with the abandonment itself, whether a landlord has accepted the tenant's abandonment is also a question of fact, which "may be implied from acts and conduct of the landlord." *Id.*

Here, there can be no dispute that Bruno's abandoned the lease. In the bankruptcy court's order approving Bruno's' rejection of the lease, effective April 8, 2009, the bankruptcy court was satisfied that Bruno's had "unequivocally relinquishe[d] control of the premises" as of that date. (Order Approving Rejection (Doc. # 31-10).) Furthermore, Millbrook Commons' argument that a breach and an abandonment cannot coincide is a *non sequitur*. In fact, the Eleventh Circuit has stated that "Section 365 enables the bankruptcy trustee to affirm or reject leases and executory contracts, and is based on the trustee's long-standing power to *abandon* obligations burdensome to the estate." *In re Gen. Dev. Corp.*, 84 F.3d 1364, 1375 (11th Cir. 1996) (emphasis added); *see also In re Stoltz*, 315 F.3d 80, 85 n.1 (2d Cir. 2002) ("A rejected lease is abandoned . . . ."). Thus, a "rejection" in bankruptcy and the common law concept of "abandonment" are closely related. Moreover, the Court does not see how a rejection of a lease under § 365 could not be an abandonment. Indeed, once a lease is rejected, the Bankruptcy Code requires that the debtor-in-possession surrender

12

the premises immediately.  2 William  L. Norton, Jr., *Norton Bankruptcy Law and Practice*
§ 46.48 (3d ed.) (citing § 365(d)(4)).  The debtor-in-possession invariably intends not to pay
rent on the unexpired lease by rejecting it in a chapter 11 reorganization; it is the reason why
the rejection mechanism exists.  Here, there can be no genuine issue of material fact that
Bruno's abandoned the lease by vacating the premises and rejecting the lease in its chapter
11 reorganization.  Thus, Bruno's rejection of the lease in its bankruptcy case was an
abandonment of the lease.

To the contrary, the Court is unable to resolve at summary judgment the moment at
which Millbrook Commons accepted the abandonment and reentered the premises.  The outer
limits establish that it could have occurred as early as April 8, 2009 (the date that Bruno's
abandoned the premises) or as late as August 10, 2009 (the date that the Triple N lease was
entered into, (Triple N Lease (Doc. # 35-9))).  *See Kaschak*, 681 So. 2d at 201 ("The trial
court correctly determined that the [landlord's] reletting [of the abandoned premises]
terminated the [abandoning lessee's] lease agreement.").  Koninklijke Ahold argues that
Millbrook Commons "accepted the abandonment and re-entered the Premises to lease it on
its own account as of April 8, 2009, as evidenced by its marketing efforts and rejection of
Ahold's Replacement Lease . . . ." (Koninklijke Ahold's Br. in Support 11.)  Neither of these
arguments is persuasive.  Marketing efforts do not constitute a re-entry; that argument is
foreclosed by the Alabama Supreme Court's decision in *Kaschak*.  In that case, the landlord
"learn[ed] that [the tenant] would soon be vacating the property, [and] began looking for new

13

tenants." 681 So. 2d 199.  Although the landlord was actively seeking replacement tenants (similar to the "marketing" involved here), the Alabama Supreme Court found that the landlord only re-entered the property as of the date the replacement lease was signed. *Id.* at 201.  Second, a landlord has a clear right under Alabama law to let the abandoned property sit vacant and collect rent from the abandoning tenant or his guarantor.  Thus, Millbrook Commons's refusal of Koninklijke Ahold's replacement lease offer in no way constitutes a re-entry on the property.

However, Koninklijke Ahold does point out in a footnote that Millbrook Commons purchased the fixtures and other equipment from Bruno's (which was left behind by Bruno's) in furtherance of its efforts to re-let the premises.  (Br. in Support 11 n.3.)  Although the Court is unwilling to render a ruling on this issue at summary judgment, *see Kaschak*, 681 So. 2d at 200 (acceptance may be implied from acts and conduct of landlord), the event is potentially significant in determining whether Millbrook Commons accepted Bruno's' abandonment prior to August 10, 2009.

**B.**     **§ 16.01 of the Lease is Inapplicable to Abandonments, and Even if Applicable, Millbrook Commons Failed to Follow the Provision's Notice Requirements**

Of course, the landlord and tenant may alter, by contract, the landlord's remedies upon a tenant's default or abandonment.  Millbrook Commons argues that the parties to the lease agreement did just that, and that Koninklijke Ahold, as guarantor, is liable for the difference in rent between the Triple N lease and the Bruno's lease under § 16.01 of the lease.  (Lease § 16.01 (upon tenant default, providing that "Tenant shall remain liable for the deficiency,

14

if any, between Tenant's rent under this Lease and the price obtained by Landlord on reletting").)  It is well-settled that "the liability of the guarantor will not exceed the liability of the principal debtor." *Kaschak*, 681 So. 2d at 201 (citing 38 Am. Jur. 2d *Guaranty* § 74 (1968)).  Therefore, Koninklijke Ahold will be liable for Bruno's' abandonment to the extent that Bruno's would have been liable for its abandonment under the remedies set forth in § 16.01.

In *Bowdoin Square*, Justice Brown, writing for a plurality of the Court, *see N&L Enter.*, 51 So. 3d at 278 (recognizing that Justice Brown's opinion in *Bowdoin Square* is a plurality opinion), construed a lease provision substantially identical to § 16.01 of the Bruno's lease in this case.  *See Bowdoin Square*, 873 So. 2d at 1098 (reproducing the lease provision at issue).  In deciding whether the lease provision in that case altered the landlord's rights upon abandonment, Justice Brown wrote:

> [P]aragraph 21 of the lease agreement between Bowdoin Square and Winn-Dixie speaks only of Winn-Dixie's failing to pay rent or failing to keep or violating any other condition, stipulation, or agreement contained in the lease. *It does not specifically address the procedure to be instituted should Winn-Dixie abandon the premises*.  As a result, Bowdoin Square 'may,' if it so chooses, look to common-law remedies, such as the ones provided in the event of abandonment, for Winn-Dixie's breach of the lease.

*Bowdoin Square* 873 So. 2d at 1101 (emphasis added).[5]  However, in writing to the lease provision, Justice Brown was faced with a different question than the one posed in this case.

---

[5]  Although Justice Harwood dissented in part as to Justice Brown's rationale in Part I.A of the plurality opinion, he appears to have concurred as to Part I.B, where the above-quoted language is found.

In that case, the landlord argued that the lease provision setting forth default remedies did not limit its rights to those contractual remedies; rather, it argued that it could pursue the common law remedies for abandonment as well.  Although the lease provision stated that, upon default, the landlord, "at its option, may *either* [do one of two things]," the plurality agreed it was not limited to those two options *for abandonment*, simply because the default provision appears not to have addressed situations involving abandonment.  Furthermore, in reaching that conclusion, the plurality relied on the Fourth Circuit case of *tenBraak v. Waffle Shops, Incorporated*, wherein the Fourth Circuit construed yet another similar lease provision under Virginia law.  542 F.2d 919 (4th Cir. 1976).  Virginia common law treated issues of abandonment similarly, *see id.* at 924, and the Fourth Circuit emphasized that such default provisions (involving re-entry or forfeiture) are to be "strictly construed" under Virginia law. *Id.* at 925; *see also Smith v. Duke*, 57 So. 2d 550, 553 (Ala. 1952) (stating that conditions subsequent are strictly construed under Alabama law).

In this case, the Court is called upon to answer the question of whether an abandonment falls within the scope of such a provision, not whether such a provision can exist in addition to the landlord's common law rights in the event of an abandonment. *Bowdoin Square*, although only persuasive authority on the issue (both in substance and as a plurality opinion), provides substantial guidance.

First, as a matter of shaping the inquiry, § 16.01 constitutes a condition subsequent. Black's Law Dictionary defines a condition subsequent as either "[a] condition that, if it

occurs, will bring something else to an end[,]" or "an event the existence of which, by agreement of the parties, discharges a duty of performance that has arisen." *Black's Law Dictionary* 312 (8th ed. 2004). Here, it is easier to begin with the duty that is discharged. Once the condition(s) arise(s), Millbrook Commons's duties under the lease are brought to an end, or are discharged. In substitution, Millbrook Commons is given two options: (1) terminate the lease; or (2) re-enter the premises in the manner specified by the plain language of § 16.01. However, in order for Millbrook Commons's duties to be discharged and replaced with the either/or remedies, two events must *both* occur. The first event occurs when Bruno's has "fail[ed] to pay any of the monthly installments of Rental reserved herein for a period of more than ten (10) days after the same . . . bec[a]me due and payable or [has] fail[ed] to keep or [has] violate[d] any other condition, stipulation or agreement herein contained . . . ." (Lease § 16.01.) The second event occurs when the "violation [has] continued for a period of thirty (30) days after Tenant [has] received written notice as herein stipulated from Landlord to pay such rent or to cure such violation or failure . . . ." (Id.)

In reaching the conclusion that § 16.01 contemplates a condition subsequent (plus remedies in the event that the condition occurs), the Court reaches two separate but related conclusions. The first conclusion is that § 16.01 must be strictly construed under Alabama law. *See Smith*, 57 So. 2d at 553. Given the common law remedial differences between default and abandonment, *Int'l Tool*, 389 So. 2d at 140, a strict construction of § 16.01 suggests that it does not apply to abandonments. This is buttressed by Justice Brown's

17

plurality opinion in *Bowdoin Square*, wherein she implied that the provision in that case did not apply to abandonments because it "does not specifically address the procedure to be instituted should Winn-Dixie abandon the premises." *Bowdoin Square*, 873 So. 2d at 1101. Indeed, such a conclusion was necessary to the outcome of that case: the landlord was free to pursue common law remedies for the abandonment because the lease provision addressing default did not apply to abandonments. If abandonments fell within the scope of the default provision, the landlord would have been limited to the two options enumerated therein. By concluding otherwise, the necessary implication is that the plurality did not view abandonments as coming within the scope of the provision. Such is the case here, and Millbrook Commons may not invoke the remedies set forth in § 16.01 of the of the lease because that provision does not apply to abandonments. Thus, Millbrook Commons is limited to the exclusive common law remedies for abandonment.

The second conclusion, which is an alternative rationale as to why § 16.01 is not applicable, is that there appears nowhere in the record any evidence that Bruno's actually received written notice from Millbrook Commons to abide by the lease. As stated above, the plain language of § 16.01 (which is to be strictly construed) requires that Millbrook Commons provide thirty days' notice to Bruno's before invoking the lease provision's remedies. Thus, assuming that § 16.01 does apply to abandonments, Millbrook Commons failed to provide the requisite notice in order to avail itself of the contractual remedies provided in that provision.

To summarize, Millbrook Commons is limited to Alabama common law.  However, since there is a genuine factual issue as to when Millbrook Commons accepted Bruno's' abandonment by re-entering the premises, the Court sees fit to hear the evidence on this issue at a bench trial (to the extent that the Court's further conclusions below do not bar Millbrook Commons' claims).

**C.**    **Millbrook Commons May Seek Recovery of Rents for the Months of February, May, June, July, and August 2009, Despite the State Court History**

Before discussing this dispute's several state court iterations prior to the filing of this declaratory judgment action, it is worth restating the effect of the Court's conclusion, *supra* at IV.B, that § 16.01 of the lease is inapplicable to Bruno's' abandonment of the premises. Because § 16.01 is inapplicable, Millbrook Commons may not attempt to hold Koninklijke Ahold liable for the rent differential between the Bruno's and Triple N leases.  Alabama common law makes clear that once the landlord accepts the abandonment by re-entering the property, the lease is terminated and the lessee's obligations (as well as those of his guarantor) are extinguished.  And because the Court concludes that Millbrook Commons accepted Bruno's' abandonment and re-entered the property *at least* as of August 10, 2009, when the Triple N lease was signed, Millbrook Commons may not seek any recovery from Koninklijke Ahold after that date.

**1.**    ***The "Two-Dismissal" Rule & February, May, June, July, and August 2009***

The state court lawsuits collectively sought recovery from Koninklijke Ahold for Feburary, May, June, July, and August of 2009.  The first question the Court will consider

is whether Alabama Rule of Civil Procedure 41(a)(1)'s so-called "two-dismissal" rule bars Millbrook Commons from any future suits to recover those months of rent.  Because there is a dearth of case law on the two-dismissal rule coming out of Alabama and because Alabama courts have consistently relied on the decisions of federal courts interpreting the analogous federal rule, s*ee Bennett v. Mortg. Elec. Registration Sys., Inc.*, 966 So. 2d 935, 938 (Ala. Civ. App. 2007) ("Because we can find no Alabama case specifically interpreting the two-dismissal rule, we look to cases interpreting the analogous federal rule for guidance." (footnote omitted)), the Court will look to federal court precedent on the two-dismissal rule found in Federal Rule of Civil Procedure 41(a)(1).

The two-dismissal rule places a limit on the number of times a plaintiff may unilaterally dismiss a complaint pursuant to Rule 41(a)(1).  Without this limitation, a malevolent plaintiff could harass a defendant with repeated complaints, only to dismiss them prior to a responsive pleading.  *See Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963).  In construing the two-dismissal rule, the Eleventh Circuit "take[s] care not to construe the rule too broadly, as it 'is an exception to the general principle, contained in Rule 41(a)(1) and honored in equity prior to the adoption of the Federal Rules, that a voluntary dismissal of an action does not bar a new suit based upon the same claim.'"  *ASX Inv. Corp. v. Newton*, 183 F.3d 1265, 1267 (11th Cir. 1999) (quoting *Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012, 1017 (2d Cir. 1976)); *see also Bennett*, 966 So. 2d at 938-39.

Of the six state court actions filed by either Millbrook Commons or the Successors, only one month of rent – February of 2009 – was demanded more than once.  Taking care not to construe the two-dismissal rule too broadly, *ASX Inv. Corp.*, 183 F.3d at 1267, the Court concludes that separate complaints seeking rents for separate months are not the same "action" for purposes of Rule 41(a)(1)'s two-dismissal rule.  Because Millbrook Commons has sued only once for rents from May, June, July, and August 2009, the two-dismissal rule does not apply to any of these months of rent.  As to February of 2009, Millbrook Commons filed the first state court action seeking rent for that month, and then filed a notice of dismissal pursuant to Alabama Rule of Civil Procedure 41(a)(1).  The second state court action, filed by the Successors, also sought rent for February of 2009.  However, unlike the first state court action, Koninklijke Ahold filed an answer.  It was only after the answer was filed that the Successors filed a motion to dismiss without prejudice, which was granted by the state court.  Because there was a responsive pleading, the dismissal had to be, and actually was, by court order.  Ala. R. Civ. P. 41(a)(2).  The Eleventh Circuit and the Alabama Court of Civil Appeals have held that a dismissal under Federal Rule of Civil Procedure 41(a)(2) does not implicate the two-dismissal rule.  *ASX Inv. Corp.*, 183 F.3d at 1268; *Bennett*, 966 So. 2d at 939.  Thus, the dismissal of the second state court action pursuant to Alabama Rule 41(a)(2) does not count for purposes of the two-dismissal rule.

**2.** ***Ala. Code § 6-5-280 Bars Millbrook Commons from Suing for March, April, May, June, July, and August 2009 Rent***

Relying on Alabama Code § 6-5-280, Koninklijke Ahold argues that Millbrook Commons is barred from seeking any rents on the Guaranty owed up to November 1, 2010.[6] (Br. in Support 19.)  However, because the Court has already decided that Koninklijke Ahold is liable through August 10, 2009, at the latest, the Court will re-shape Koninklijke Ahold's argument somewhat.  Section 6-5-280 is titled "Breach of contract – Limitation on actions[,]" and it reads, in its entirety:

> If a contract is entire, only one action can be commenced for breach thereof; but if it is severable or if the breaches occur at successive periods in an entire contract, as where money is to be paid by installments, an action will lie for each breach; provided, that all of the breaches occurring up to the commencement of the action must be included therein.

§ 6-5-280.  As Justice Brown's plurality opinion in *Bowdoin Square* recognized, leases for periodic rent fit within the category of contracts contemplated by § 6-5-280.  873 So. 2d at 1104 (citing *Nicrosi v. Roswald*, 21 So. 338, 339 (Ala. 1897) and *Dawson v. Haygood*, 180 So. 705, 707 (Ala. 1938)).  "Each failure to pay an installment when due creates a separate cause of action."  *Old S. Life Ins. Co. v. Free*, 247 So. d 379, 382 (Ala. 1971).  Thus, "[u]pon a showing of abandonment of the premises by the tenant, the landlord may recover the whole lease payment, either by suing at the end of the lease term *when all of the lease payments have accrued*, or it may bring a separate action for each missed payment *as it accrues*."

---

[6] As stated above, the Guaranty contains a choice of law provision designating Alabama law as controlling the Guaranty's interpretation.  Neither party argues that Alabama does not control issues regarding the Guaranty.

*Bowdoin Square*, 873 So. 2d at 1104-05 (emphasis added) (citing *Ryals v. Laney*, 338 So. 2d 413, 415-16 (Ala. Civ. App. 1976)).  As the emphasis placed upon the above quotation indicates, the content of the action depends on the timing of the action.  The landlord has two options: (1) sue for each month individually immediately as it becomes due; or (2) sue for all months once they all have become due.  Section 6-5-280 is the codification of this principle, stating that "all of the breaches occurring up to the commencement of the action *must* be included [in the landlord's complaint]."  *Id.* (emphasis added).  Because the Guaranty "guarantees the due fulfillment by [Bruno's] of all of [Bruno's'] financial obligations under the Lease," the Guaranty takes on the periodic nature of the Lease itself and falls within the ambit of § 6-5-280.  Additionally, it is a general principle of guaranty law that the guarantor's liability is co-extensive to the liability of the original debtor on the original contract.  *See, e.g.*, 38 Am. Jur. 2d *Guaranty* § 58 (2d ed.) ("Because a guarantor steps into the shoes of the original debtor, the guarantor's liability depends on the construction and interpretation of the underlying contract.").

Koninklijke Ahold argues that all breaches occurring up to the commencement of the action must be asserted at the commencement of the action.  A nuanced reading of § 6-5-280 dispels this flawed reading.  The line of statutory text at issue is:  "[A]ll of the breaches occurring up to the commencement of the action must be included therein."  *Id.*  Koninklijke Ahold would have the Court consider the phrase "commencement of the action" out of context, by interpreting that clause to refer to when the alleged breaches must be pleaded.

23

This is simply not the case.  Rather, the statute states that all breaches occurring up to the commencement of the action must be included in the action, even if their inclusion comes at a later date.

An example is helpful in parsing the meaning.  Imagine that a landlord has filed a complaint in August of 2010.  The complaint initially sought rent for the month of June 2009 alone, despite landlord's contention that it is owed for other months in 2009 as well.  Applying Koninklijke Ahold's interpretation of § 6-5-280, the landlord would be foreclosed from later amending the complaint to include the additional months, because those claims were not presented at the commencement of the action.  However, this is not what the statute calls for.  Rather, the statute merely demands that all already-occurred breaches be included in the action.  Of course, inclusion of additional claims in an action after the commencement of the action may be done by amending the complaint.

This example, oddly enough, has a real-life parallel.  The third state court action in this case was filed in August 2010, but sought rent for June 2009 alone.  However, the action remains pending, and Millbrook Commons may seek to amend its complaint (with leave of the circuit court) to add claims for the additional months without running afoul of § 6-5-280.

However, in order to accomplish this, it must follow that the second state court action is of no consequence with respect to § 6-5-280.[7]  The second state court action (seeking rent from February 2009 only) was filed by Millbrook Commons in December of 2009.  It was

---

[7]  Koninklijke Ahold makes no argument concerning the first state court action, and it will not be addressed.

24

later dismissed on motion of Millbrook Commons without prejudice pursuant to Alabama Rule of Civil Procedure 41(a)(2).  There is a well-established principle of law that an action voluntarily dismissed without prejudice is looked upon as never having been filed.  *See Ex parte Scannelly*, 74 So. 3d 432, 437 (Ala. 2011) ("'The effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought.'" (quoting *Reid v. Tingle*, 716 So. 2d 1190, 1193 (Ala. Civ. App. 1997))).  Construing § 6-5-280's use of the word "action" in connection with this principle, it becomes clear that § 6-5-280's reach does not extend all the way back to actions that were properly dismissed without prejudice.  Alabama law views such actions as having never been filed, and it would be anomalous to read § 6-5-280 to mandate otherwise.

In short, the reading proposed by Koninklijke Ahold would make an unduly harsh statute out of § 6-5-280.  It would both forbid a plaintiff from amending an already-filed complaint so as to comply with the statute, and it would give *res judicata* effect to voluntarily dismissed actions.  Neither the plain language of the statute nor common sense supports Koninklijke Ahold's position.

## V.  CONCLUSION

Based upon the foregoing, it is hereby DECLARED that:

(1)    Millbrook Commons may not seek recovery of any rent past August 10, 2009, the date the Triple N lease was entered into, because Bruno's breach of the

25

lease constituted an abandonment, and because § 16.01 is inapplicable to abandonments;

(2)     The "two-dismissal" rule does not bar Millbrook Commons from recovering under the Guaranty; and,

(3)     Section 6-5-280 of the Alabama Code does not bar Millbrook Commons from recovering under the Guaranty.

It is further ORDERED that:

(3)     Plaintiff/Counterclaim Defendant Koninklijke Ahold's Motion for Summary Judgment (Doc. # 31) is GRANTED in part and DENIED in part; and,

(4)     Defendants/Counterclaim Plaintiffs Millbrook Commons' (and the Successors') Motion for Partial Summary Judgment (Doc. # 34) is DENIED.

DONE this 12th day of September, 2012.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE