IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KONINKLIJKE AHOLD, N.V., | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:10-cv-1060-MEF |
| | ) | (WO – Do Not Publish) |
| MILLBROOK COMMONS, LLC, *et al.*, | ) | |
| | ) | |
| Defendants/Counterclaim- | ) | |
| Plaintiffs. | ) | |

## **OPINION**

Defendants/Counterclaim-Plaintiffs Millbrook Commons, LLC, Karen D. Stephens, and Milton G. Domit Limited Liability Company ("Millbrook")[1] assert claims against Counterclaim-Defendant Koninklijke Ahold, N.V. ("Ahold"), an international grocery retailer, for unpaid rent on a lease of non-residential real property that was operated as a supermarket. Ahold guaranteed a lease between Bruno's Supermarkets, LLC ("Bruno's"), a supermarket chain Ahold acquired in 2001 and the lessee in this case, and Millbrook, the property owner and landlord. When Bruno's later filed for Chapter 11 bankruptcy, it rejected the lease with Millbrook and vacated the property.

---

[1] Millbrook Commons, LLC was the original owner of the property at issue. Millbrook Commons, LLC sold the Property to Milton J. Domit (60%), Milton G. Domit (20%), and Karen Stephens (20%). Milton J. Domit is deceased and his 60% interest in the Property is now owned by the Estate of Milton J. Domit. Milton G. Domit and Karen Stephens have placed their interests in the Property in the Milton J. Domit Family, LLC. Millbrook Commons is a joint venture between the Estate of Milton J. Domit and the Milton J. Domit Family, LLC, and is the proper party in this litigation. For ease of reference, the Court will refer to all Defendants in this case (Millbrook Commons, Karen D. Stephens, and Milton G. Domit Limited Liability Company) collectively as Millbrook.

The sole question to be decided is when Millbrook accepted Bruno's' abandonment of the lease by re-entering the property, thus extinguishing Ahold's liability under its guarantee agreement with Millbrook.[2] Millbrook contends that it accepted the abandonment of the lease on August 10, 2009, the date it entered into a new lease agreement with another tenant. Ahold contends, however, that Millbrook accepted Bruno's abandonment on one of two other dates: (1) April 8, 2009—the date upon which Bruno's' rejection of the lease in bankruptcy became effective;[3] or (2) May 27, 2009—the date upon which Ahold contends Millbrook rejected Ahold's offer of a replacement lease.

When a lessee abandons a lease, the landlord has two exclusive remedies at common law. *Ex parte Kaschak*, 681 So. 2d 197, 200 (Ala. 1996). First, the landlord may allow the premises to stay vacant for the duration of the lease and recover rent from the lessee for the whole term. *Id.* (explaining that the landlord "is under no affirmative duty to mitigate"). Second, the landlord may accept the abandoned property by re-entering the premises. *Id.* When the landlord pursues this second option, the re-entry extinguishes the abandoning lessee's obligations under the lease. *Id.* Whether a landlord has accepted the tenant's

---

[2]  In its Memorandum Opinion and Order entered on September 12, 2012, this Court concluded that Millbrook was limited to its common law remedies against Ahold for Bruno's' abandonment of the lease, finding that § 16.01 of the lease—which provides certain relief to the landlord if the tenant *defaults* on the lease—does not apply. (Doc. #45, at 18.) Thus, it is the issue of Bruno's' abandonment of the lease, rather than Bruno's' default on the lease, that is before the Court.

[3]  Ahold contends that Millbrook's acceptance of the abandonment of the Lease occurred on the date that the rejection of the Lease in bankruptcy became effective, given that Millbrook had purchased the fixtures in Property from Bruno's March 13, 2009.

abandonment is a question of fact, which "may be implied from acts and conduct of the landlord." *Id.*

After weighing the evidence and testimony offered by the parties during a bench trial conducted on October 29, 2012, and the post-trial stipulation submitted by the parties (Doc. #58), the Court finds that judgment is due to be entered in favor of Defendants/Counterclaim-Plaintiffs Millbrook and against Plaintiff/Counterclaim-Defendant Ahold. In support of this judgment, the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

1.      Millbrook and Bruno's entered into a lease (the "Lease") on December 3, 2001, for the property located in the Millbrook Shopping Center at 3543 Highway 14, Millbrook, Alabama 36054 (the "Property").

2.      The monthly rent under the Lease for the years 2001 through 2011 was $29,798.77.

3.      Bruno's paid rent as due under the terms of the Lease through April 2009.

4.      Ahold is an international grocery retailer based in Amsterdam, the Netherlands, and it acquired Bruno's in December 2001.

5.      Ahold signed a guaranty (the "Guaranty") covering Bruno's' obligation under the Lease on March 29, 2002.

6.      On February 5, 2009, Bruno's filed a Chapter 11 Petition in the United States Bankruptcy Court for the Northern District of Alabama (the "Bankruptcy Court").

7.      Prior to Bruno's bankruptcy filing, Millbrook and its real estate broker, Retail Specialists, Inc. ("Retail Specialists"), heard rumors of the impending Bruno's bankruptcy.

8.      At or around the date of Bruno's bankruptcy filing, Millbrook instructed Retail Specialists to begin marketing the Property in anticipation of Bruno's rejecting the Lease in bankruptcy.

9.      Following the instructions of Millbrook, Retail Specialists began marketing the Property in February 2009.

10.     On March 5, 2009, Millbrook received a letter of interest from Triple N Enterprises, Inc. ("Triple N") to rent the Property.  In its letter, Triple N proposed a lease term of five, five-year options at a base rent of $200,000 per year, plus additional rent to be based on sales.

11.     On March 13, 2009, pursuant to an order approved by the Bankruptcy Court, Millbrook purchased from Bruno's fixtures located at the Property—including refrigerators, freezers, copper pipes, and wiring—at a cost of $300,000.00.

12.     Millbrook purchased the fixtures from Bruno's to preserve the value of the Property, which had been outfitted for, and had always been operated as, a supermarket.

13.     On March 16, 2009, Bruno's moved the Bankruptcy Court to approve the rejection of certain nonresidential real property leases, including the Lease.  Millbrook did not object to the rejection motion.

14.     On April 10, 2009, the Bankruptcy Court granted Bruno's' motion to reject the Lease and entered an order stating that Bruno's' rejection of the Lease was effective as of April 8, 2009.

15.     As of April 8, 2009, Bruno's was no longer operating at the Property and had vacated the Property.

16. On April 16, 2009, Irving Rachstein ("Rachstein"), on behalf of Ahold, sent a letter to Robert Adams ("Adams"), counsel for Millbrook, offering a replacement lease for the Property. Ahold offered rent that was equivalent to what Bruno's had been paying. Ahold, however, indicated in its offer that it did not presently intend to operate a supermarket at the Property and would seek to assign the new lease or sublet the Property.

17. After receiving the April 16 letter from Rachstein, Millbrook asked Retail Specialists whether it should accept Ahold's offer of a replacement lease and thereby turn over possession of the Property to Ahold. Retail Specialists recommended that it would not be wise to do so.

18. Millbrook did not negotiate the terms of the replacement lease with Ahold.

19. On May 5, 2009, Millbrook received a revised letter of interest on the Property from Triple N. In this letter, Triple N proposed a lease term of five, five-year options at a reduced base rent of $150,000 per year for the first five years, and $180,000 per year for the second five-year option, plus additional rent in both periods to be based on sales. For all remaining options, there would be a 5% base rent increase.

20. On May 27, 2009, Adams, on behalf of Millbrook, sent a letter to Rachstein informing him of Millbrook's intent to secure a new tenant for the Property. The letter stated: "The purpose of this letter is to advise you that we believe we are entitled to move forward and have our commercial real estate brokers secure a new tenant for the [Property]."

21. On May 28, 2009, Millbrook received a second revised letter of interest from Triple N. Triple N proposed an initial lease term of ten years, with two five-year renewal

options.  The proposed base rent was increased to $200,000 per year for the first five years, and $220,000 per year for the next five years, plus additional rent in both periods to be based on sales.  For all additional five-year options, rent would be negotiated based on market rates.

22.     On June 3, 2009, Rachstein sent a letter in response to Adams's May 27 letter, in which he acknowledged Millbrook's rejection of Ahold's replacement lease offer.  The letter stated: "[A]s your client obviously cannot rent the premises to its new tenant and also to Ahold, your client has rejected Ahold's offer to enter into a new lease for the [Property] . . . ."

23.     On June 8, 2009, Millbrook received a third revised letter of interest from Triple N.  In this proposal, the initial lease term was decreased to seven years, with two five-year options.  The proposed rent remained at $200,000 per year for the first five years of the initial term, but was increased to $220,000 per year for the next two years, plus additional rent in both periods to be based on sales. The rent for the two five-year options would be negotiated based on market rates.

24.     On August 10, 2009, Millbrook and Triple N entered into a lease for the Property predicated on the same lease terms proposed in Triple N's June 8 letter of interest.

25.     From March 5, 2009, through the entry of the lease on August 10, 2009, Millbrook and Triple N continually negotiated the terms of a lease for the Property.

26.     Millbrook accepted the abandonment by re-entering the Property on August 10, 2009, the date Millbrook secured a new tenant for the Property by entering into a lease agreement with Triple N.

27.    Millbrook's purchase of the fixtures in the Property from Bruno's on March 13, 2009—to protect the value of the Property as a supermarket and in furtherance of its efforts to re-let the Property—does not constitute an acceptance of the abandonment of the Lease by re-entry.

28.    Millbrook's search for a replacement tenant, its marketing efforts, and its notice to Ahold of its intent to re-let the Property by its May 27, 2009 letter does not constitute an acceptance of the abandonment of the Lease by re-entry.

29.    Millbrook's rejection of Ahold's replacement lease offer does not constitute an acceptance of the abandonment of the Lease by re-entry.

## II.  CONCLUSIONS OF LAW

1.    Subject-matter jurisdiction is exercised pursuant to 28 U.S.C. § 1332 (diversity) and 28 U.S.C. §§ 2201 & 2202 (declaratory judgments).

2.    Venue is appropriate pursuant to 28 U.S.C. § 1391.

3.    Because the Court has found that Millbrook accepted Bruno's' abandonment of the Lease on August 10, 2009, when it re-let the Property to Triple N, the Court concludes that Millbrook is entitled to unpaid rent from May 1 through August 10, 2009.

4.    Millbrook is thus entitled to rent from Ahold in the amount of $99,008.81 (3 months rent at $29,798.77 per month plus 10 days rent at $961.25 per day), plus pre-judgment interest in the amount of $24,387.66 (7.5% per annum, $20.34 per day, from August 10, 2009, to November 20, 2012).  *See* Ala. Code § 8-8-10.

5.    Millbrook is the prevailing party in this action.

7

6.    Millbrook sought attorneys' fees, pursuant to Section 21.04 of the Lease and Paragraph 10 of the Guaranty.  Because Millbrook is the prevailing party in this action, Millbrook would be entitled to attorneys' fees pursuant to Section 21.04 of the Lease and Paragraph 10 of the Guaranty.  However, because Millbrook presented no evidence of attorneys' fees at trial, none will be awarded.

Consistent with this ruling, the Court will enter a written final judgment in favor of Defendants/Counterclaim-Plaintiffs Millbrook Commons,  Karen D. Stephens, and Milton G. Domit Limited Liability Company, and against Plaintiff/Counterclaim-Defendant Koninklijke Ahold, N.V.

DONE this the 20th day of November, 2012.

_____/s/ Mark E. Fuller_____
UNITED STATES DISTRICT JUDGE